IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

DARYL WAYNE MASON,       )
                                       )
        **Plaintiff,**       )
                                       )
v.                           )         **Case No. CIV-23-159-SPS**
                                       )
MARTIN O'MALLEY,[1]       )
Commissioner of the Social      )
Security Administration,       )
                                       )
        **Defendant.**    )

**OPINION AND ORDER**

The claimant, Daryl Wayne Mason, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kiakazi as the Defendant in this action.

engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

---

[2]  Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

Claimant was born on June 21, 1976, and was 45 years old on the alleged amended disability onset date, July 21, 2021. (Tr. 12-29).  He was 46 years old at the time of the most recent administrative hearing. (Tr. 30-69). He has completed his high school education and has past relevant work experience as a hand packer, garbage collector, and pizza baker. (Tr. 22).  Claimant asserts he has been unable to work since July 21, 2021, alleging disability due to issues with obesity, Degenerative Disc Disease, Emphysema, depressive bipolar and related disorders, anxiety and obsessive-compulsive disorders, Alcohol and Methamphetamine use Disorder, Hypothyroidism, and GERD. (Tr. 17, 287).

**Procedural History**

Claimant applied for disability insurance benefits pursuant to Title II of the Social Security Act in July 2021, alleging disability beginning on July 21, 2021. (Tr. 15, 241-256). Claimant's application was denied initially and on reconsideration. Following an administrative hearing, ALJ Michael Mannes issued a written opinion on October 19, 2022, determining Claimant was not disabled. (Tr. 12-29). The Appeals Council denied review, making the ALJ's written opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-7). *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  At step two, the ALJ found that Claimant had several severe physical and mental impairments, and also suffered from non-severe impairments. (Tr. 17).

Next, he found that Claimant's impairments did not meet a listing.  (Tr. 18).  At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform a range of light work with the following nonexertional limitations:

occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, frequently balancing, occasionally stooping, kneeling crouching, or crawling, must avoid frequent exposure to dust, odors, fumes and pulmonary irritants, able to understand, remember and carry out simple tasks with routine supervision for two hour periods over the course of a normal eight hour work day with routine work breaks, can relate to supervisors and co-workers on a superficial work basis, incidental interaction with the general public, can respond appropriately to changes in a routine work setting which are gradually introduced and infrequent.

(Tr. 19).

The ALJ found that this RFC did not allow Claimant to perform his past relevant work, but found in the alternative at step five, based on testimony form the vocational expert at Claimant's hearing, that Claimant could perform jobs that existed in significant numbers in the national economy. (Tr. 22-23).

## Review

Claimant contends the ALJ erred because he failed to apply correct legal standards when assessing the medical opinions of record causing error at Step Five. The Court agrees and the decision of the ALJ must therefore be reversed.

The relevant evidence before the ALJ reflects that the medical source opinion from Dr. Mohammed Kanaa, M.D. fount the following:

> Clmnt reports has a hard time breathing. Has emphysema. Clmnt takes care of pets. Clmnt does not bathe or wash clothes for days. Clmnt makes simple meals. Clmnt does minimal HH chores. Clmnt does not drive and refuses to do public transportation. Clmnt can count change and pay bills. Clmnt does not socialize period. Clmnt can walk ten minutes before taking a 5 min break. Clmnt is hardly on his feet. Clmnt gets confused with instructions and forgets. Clmnt gets along well with others. Clmnt has side effects of sleepy form MH meds.

(Tr. 121).

Additionally, both reviewing psychiatrists, Dr. Jason Gunter, PhD, and Dr. G. Lindsay, PhD, assessed Claimant as able to understand, recall, and perform simple and detailed tasks. (Tr. 125, 138). On reconsideration, Dr. Lindsay assessed Claimant's ability to maintain attention and concentration, persist, and retain pace for extended periods of time moderately limited. (Tr. 137). They both assessed Claimant as able to interact superficially with the public. (Tr. 125, 137). They also both found Claimant could adapt to a work setting with some changes or, alternatively, unlimited in this area. (Tr. 125, 138).

In assessing these limitations, at the initial level, Dr. Gunter found Claimant moderately limited in understanding, remembering, and carrying out detailed tasks. (Tr. 122, 123). He assessed Claimant as moderately limited in dealing with the public. (Tr. 123). On reconsideration, Dr. Lindsay assessed the same. (Tr. 137).

Claimant's updated medical records from Carl Albert through January 2022, reflect Claimant's lethargy, sleep disturbance, and panic attacks. (Tr. 876, 882, 952, 955, 956, 960, 962, 973, 975, 977, 987, 993). The record also reveals Claimant takes multiple sedating medications to control his paranoid schizophrenia and that he must be roused throughout the day. *Id.*

Claimant consistently states he has little, or no anxiety yet describes feeling "jittery," experiencing panic attacks, and rarely leaving home to the point that he exercises only indoors given his agoraphobia. (Tr. 951, 993). Likewise, he notes little daytime sleepiness, yet his friend indicates he sleeps too much during the day and he is observed as lethargic and asleep during appointments. (Tr. 876, 951, 952, 954, 962). When discussing Claimant's ability to maintain concentration, persistence, and pace, the ALJ noted that while Claimant alleged difficulty completing tasks, he could perform some daily chores. (Tr. 18).

The Court finds the ALJ does not adequately explain whether Claimant can complete detailed tasks given his moderate understanding and concentration issues assessed and the known side effects caused by his required medications. (Tr. 18, 135). *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (error fatal where ALJ passed over significant probative record evidence); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (it is improper for ALJ to pick and choose to consider only evidence supporting an unfavorable decision and exclude evidence favoring Claimant). The analysis is conclusory and insufficient. *Oldham* at 1258. An ALJ may not rely on minimal activities to demonstrate Claimant can perform substantial gainful activity. *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993); *Cavitt v. Schweiker,* 704 F.2d 1193, 1195 (10th Cir. 1983); *Berryhill v. Barnhart*, 67 Fed.Appx 196, 200 (10th Cir. 2003); *Piatt v. Barnhart*, 225 F.Supp.2d 1278, 1291 (D.Kan. 2002).

Further, the ALJ's hypothetical question limited an individual to understanding, remembering, and carrying out simple tasks. (Tr. 19, 63-64). The employment the vocational witness ("VW") assigned was the same when the ALJ asked if an individual was limited to simple and detailed tasks, versus limited only to simple tasks. (Tr. 62-64). Upon clarifying whether the *Dictionary of Occupational Titles* ("*DOT*") considered reasoning levels separately from the SVP codes, the VW replied affirmatively. (Tr. 66). *Meissl v. Barnhart,* 403 F.Supp. 2d 981, 983 (Dist. Court Cal. 2005) (*explaining* a job's specific vocational preparation ("*SVP*") score focuses on the amount of time it takes a typical worker to learn the job's duties; by contrast, a job's assigned reasoning level gauges the minimal ability a worker needs to complete the job's tasks themselves).

The *DOT* contains six levels of Reasoning Development. *Cooper v. Barnhart,* 2004 WL 2381515 *4-5 (N.D. Okla. Oct. 15, 2004) (unpublished). Level one provides an individual can "apply commonsense understanding to carry out simple one-or two step instructions. Deal with

standardized situations with occasional or no variables in or from these situations encountered on the job." *Cooper* at \*4. Level two requires a person to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.* Here, it is the ALJ's burden to ensure the RFC is the most Claimant can do. 20 CFR § 404.1545(a)(1) (an RFC assessment is "the most [a claimant] can do in a work setting," considering "any related symptoms, such as pain" that an individual's physical and mental limitations may cause in a work setting).

In this case, the ALJ never properly explained how Claimant would be capable of performing work requiring him to understand, remember, and carry out detailed tasks on a regular basis given his known medication side effects, moderate understanding limitations, and moderate extended concentration limitations. The VW assigned two jobs requiring Claimant to understand, remember, and carry out detailed tasks. (Tr. 22). *SSR* 00-4p (where a conflict exists with the *DOT*, the ALJ must identify and reconcile it); *Haddock v. Apfel,* 196 F.3d 1084, 1089 (10th Cir. 1999) (the *DOT* applies certain classification schemes and must be clarified and "massaged;" where the ALJ failed to ask the VW to explain his or her thought process, but "settled for a summary conclusion" this is a reversible error). Here, a conflict exists given the plain language of the *DOT's* categories.  Nonetheless, the ALJ, despite being alerted to the fact that the VW assessed reasoning limitations separately from the SVP code, did not seek clarification. (Tr. 66). A remand is required so that a reasonable explanation may be made on the record and to allow the ALJ to explain his decision as to how the conflict was resolved.

 Further, this issue was compounded by the ALJ improperly explaining the social limitations assessed. The ALJ did not summarize the specific limitations found by the reviewing psychiatrists. Instead, the ALJ only stated the reviewing psychiatrist's findings were "somewhat"

-7-

supported before assessing his own limitations. No evidence exists in the ALJ's psychiatric review which reflects that he considered Claimant's agoraphobia, social phobia, or panic disorder when considering what limitations he possessed in interacting with employers and supervisors, and how he would access workplaces. *See POMS DI* 25020.010 (most competitive jobs require the ability to travel to and from work; an adjudicator should consider if an individual is incapable of leaving home due to agoraphobia). The ALJ's assessment of Claimant's medical summary does not analyze Claimant's diagnoses of these impairments. The assessment does not analyze Claimant's panic attacks, or note that even if he "shops alone," he is limited to fifteen-minute runs once a month because he fears being "attacked" by someone. (Tr. 18, 49, 339, 340-342). Here, the evidence to which the ALJ cites, including Claimant's ability to shop and live with his wife, is inadequate to demonstrate Claimant is capable of workplace activity on a regular and continuing basis, particularly when assessing the evidence demonstrating the severity of Claimant's agoraphobia. *Carpenter* at 1266.

Finally, the ALJ's *SSR* 16-3p assessment also fails to address this issue. When a medical source assesses functions that limit a claimant's work activity, the ALJ must explain why that functional limitation does not appear in the RFC. *Frantz v. Astrue*, 509 F.3d 1299, 1302-1303 (10th Cir. 2007); *Givens v. Astrue*, 251 Fed. Appx. 561, 568 (10th Cir. 2007). Here, the reviewing psychiatrists found moderate limitations in Claimant's ability to maintain attention and concentration, persist and retain pace for extended periods, but the ALJ failed to account for these limitations in the claimant's RFC. The Commissioner observes that if the ALJ finds an opinion of a medical source only partly persuasive, he can reference sections he chooses and ignore other parts. However, if this is what the ALJ intended he should have explained why the limitations

were not included in the claimant's RFC. *Frantz*, 509 F.3d at 1302-1303; *Givens*, 251 Fed. Appx. at 568.

The decision of the Commissioner must accordingly be reversed and the case remanded to the ALJ for further analysis as discussed above.  If on reconsideration the ALJ finds that any changes must be made to the claimant's RFC, he should then redetermine what work, if any, Claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the Court finds the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**IT IS SO ORDERD this 15th day of May, 2024.**

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**